IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNION PACIFIC RAILROAD
COMPANY,

          Plaintiff,

vs.

BNSF RAILWAY COMPANY,

          Defendant.

8:16CV63

FINDINGS AND RECOMMENDATION

This matter is before the court on Defendant's Motion to Dismiss. (Filing No. 2). For the following reasons, the motion should be granted.

## BACKGROUND

A dispute arose between Plaintiff Union Pacific Railroad Company ("UP") and Defendant BNSF Railway Company ("BNSF") regarding reimbursements for work done to a shared railway. In April of 2015, UP initiated arbitration against BNSF in accordance with the Interstate Commerce Commission's 1967 order (the "ICC Order") relating to joint operations by the parties. (Filing No. 1 at CM/ECF pp. 3–4). Within the arbitration, BNSF asserted a counterclaim seeking resolution of other similar cost-sharing issues that arise under approximately 34 Trackage Rights Agreements between UP and BNSF. BNSF brought each dispute within its counterclaim seeking a ruling from the original panel in one proceeding, "rather than pursuing piecemeal litigation," to avoid potentially inconsistent results. (Filing No. 5-1 at CM/ECF p. 70).[1]

UP filed the above-captioned lawsuit to enjoin BNSF from pursuing its counterclaim within the original arbitration. UP asserts that because the counterclaims do

---

[1] UP has filed under seal around 2,600 pages of exhibits pertaining to the 34 joint trackage agreements. (See Filing Nos. 18–23-8).

not arise under the ICC Order, but are instead at least 33 separate and unrelated disputes arising from agreements, they should not be consolidated with the original arbitration proceeding. (See Filing No. 1-1, Filing No. 25 at CM/ECF p. 3). UP also seeks a declaration from this court that the arbitrators' jurisdiction is limited to addressing claims arising under the ICC Order.

BNSF seeks an order dismissing UP's claim from this court. BNSF claims the issue of consolidation is not one for the court, but for the arbitrator to determine. (Filing No. 2).

## LEGAL ANALYSIS

UP and BNSF agree that nearly all of the underlying claims are subject to arbitration through arbitration provisions located in the joint trackage agreements.[2] However, the undersigned has examined the arbitration provisions located within 34 agreements filed under seal and found that each arbitration provision is silent regarding the consolidation of claims. Thus, BNSF's Motion to Dismiss raises a single issue: where the arbitration provisions are silent on the issue of consolidation of claims, who decides whether consolidation of the parties' claims in a single, bilateral arbitration is appropriate—the arbitrator or the court?

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83 (2002) (quoting Steelworkers v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960)). However, when it comes to ancillary arbitration issues, a vexing question arises as to who determines those issues. The Supreme Court has

---

[2] According to UP, only one of the approximately 34 agreements lacks an arbitration provision. (Filing No. 25 at CM/ECF p. 9).

provided guidance and held that "questions of arbitrability" are to be determined by the court while all other 'procedural' matters must be determined by the arbitrator. See generally Green Tree Fin. Corp. v. Bazzle, 539 U.S 444 (2003); Howsam, 537 U.S. 79; First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995).

> The court's authority to decide "questions of arbitrability" includes:
>
> [W]here contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

Howsam, 537 U.S. at 83. For example, the court decides: 1) whether non-signatories to a contract can be bound to an arbitration provision, see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995); 2) whether an arbitration agreement survived a corporate merger and bound the resulting corporation, see John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964); and 3) whether certain disputes fall within an arbitration clause, see Atkinson v. Sinclair Refining Co., 370 U.S. 238 (1962).

But "'procedural questions which grow out of the dispute and bear on [the] final disposition' are presumptively not for the judge, but for an arbitrator, to decide." Howsam, 537 U.S. at 84 (quoting John Wiley, 376 U.S. at 557). Examples of procedural questions include: 1) whether conditions precedent to arbitration have been fulfilled, see Howsam, 537 U.S. at 84 (citations omitted); and 2) defenses to arbitrability, see Moses H. Cone Memorial Hospital v. Mercury Const. Corp., 460 U.S. 1 (1983).

Numerous courts have discussed the issue of whether consolidation of arbitration proceedings is an issue to be decided by the court or the arbitrator. See Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., 489 F.3d 580 (3rd Cir. 2007); Employers Insurance Company of Wausau v. Century Indem. Co., 443 F.3d 573 (7th Cir. 2006); Supermarkets, Inc. v. United Foods & Commer. Workers Union, Local

3

791, 321 F.3d 251 (1st Cir. 2003); Hart v. ITC Serv. Grp., 15-CV-599-W-DGK, 2016 U.S. Dist. LEXIS 72260 (W.D. Mo. June 2, 2016); Safra Nat'l Bank v. Penfold Inv. Trading Ltd., 10 Civ. 8255, 2011 WL 1672467 (S.D.N.Y. Apr. 20, 2011).

In Avon Prods., Inc, v. Local 710, 386 F.2d 651 (8th Cir. 1967), the Eighth Circuit held that the issue of whether claims should be consolidated is determined by the arbitrator. But unlike the claims between UP and BNSF, the two claims raised in Avon Products arose from the same contract. 386 F.2d 651. UP argues Avon cannot control the present analysis because BNSF's claims arise from many distinct and separate contracts. Regardless, a number of other Circuits have similarly held that consolidation of claims is a procedural issue for an arbitrator to decide: These cases contain a varying number of claims and contracts. See Certain Underwriters, 489 F.3d 580 (concerning consolidation of claims arising from eight separate contracts); Employers Insurance, 443 F.3d 573 (concerning consolidation of claims arising from two separate contracts); Shaw's Supermarkets, 321 F.3d 251 (concerning consolidation of claims arising from three separate contracts); see also Dockser v. Swartzberg, 433 F.3d 421, 426–27 (4th Cir. 2006) (discussing in dicta the consolidation of separate arbitration proceedings and holding that questions of arbitrability are only raised "when there is a question regarding whether the parties should be arbitrating at all . . . .").

UP argues the Supreme Court's holding in Stolt-Nielsen v. Animalfeeds International Corp. controls this court's analysis; that the case law provided in Howsam and the other circuits is outdated and "stale."[3] UP contends Stolt-Nielsen applies because like a class action arbitration which contains many different parties, the consolidation of the numerous claims in this case "change[s] the nature of the proceedings to such a

---

[3] Although it is not explicitly stated by UP, it essentially argues that Stolt-Nielsen overruled the holding of Howsam and its jurisprudence.

4

degree that absent a clear agreement expressing otherwise, they are presumptively questions of arbitrability for the court to decide." (Filing No. 25 at CM/ECF p. 1).

Stolt-Nielsen held that permitting class arbitration—where the arbitration agreement was silent on the issue—was inconsistent with the FAA: A party cannot be "compelled" to participate in class arbitration unless it had agreed to do so. See Stolt-Nielsen, 559 U.S. 662. In making its determination, the Court had to decide whether an arbitration provision that is silent on the issue of class arbitration is sufficient evidence that a party intended to submit to class arbitration. Stolt-Nielsen reasoned:

> In bilateral arbitration, parties forgo the procedural rigor and appellate review of the courts in order to realize the benefits of private dispute resolution: lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes. . . . But the relative benefits of class-action arbitration are much less assured, giving reason to doubt the parties' mutual consent to resolve disputes through classwide arbitration.

Stolt-Nielsen, 559 U.S. at 685–86 (citations omitted). The Court then closely examined and discussed "some of the fundamental changes brought about by a shift from a bilateral arbitration to class-action arbitration," (See Id. at 686–87),[4] and concluded "the differences between bilateral and class-action arbitration are too great for arbitrators to presume . . . [the parties] consent to resolve their dispute in class proceedings." Id. at 687.

UP argues that as in Stolt-Nielsen, the agreements between UP and BNSF were silent as to consolidation of claims, and consolidation to include BNSF's counterclaims so substantially changes the proceeding that the court cannot presume that the parties agreed to submit the issue of consolidation to the arbitrator. However, in the current

---

[4] Briefly, the changes included (1) the expansion from two to potentially thousands of parties; (2) the presumption of privacy and confidentiality that normally applies in bilateral arbitrations is nullified in class arbitration; and (3) the arbitration no longer binds only the parties to an arbitration agreement, but also nonparties.

5

matter, the parties' claims remain part of a bilateral proceeding between UP and BNSF and the shifting changes examined and relied upon by Stolt-Nielsen are not implicated here. See Id. at 686. And the Defendant does not allege any substantial changes in the proceedings that warrant a similar finding.[5] In fact, Stolt-Nielsen was clearly limited to the issue of class-arbitration. It never mentions consolidation of several bilateral proceedings.

Simply stated, UP's contention that Stolt-Nielsen controls this analysis improperly conflates consolidating parties (through class action procedures) with consolidating claims. The undersigned is not persuaded that Stolt-Nielsen controls the analysis for deciding the UP/BNSF consolidation dispute presently before this court.

Citing Howsam, in Certain Underwriters at Lloyd's London v. Westchester Fire Ins. Co., the Third Circuit held that when the parties have submitted a dispute to arbitration, the arbitrator, not the court, decides whether to consolidate claims arising from numerous contracts. Certain Underwriters, 489 F.3d 580. In Certain Underwriters, the plaintiffs brought claims arising under at least eight contracts, each of which contained an arbitration provision. Id. at 582.[6] Although the defendant admitted each contract contained an arbitration provision, it argued that "[n]one of the agreements provide for the consolidation of arbitration proceedings, let alone consolidation with proceedings under other contracts." Id. at 583. The defendant filed a federal lawsuit,

---

[5] One of the changes addressed by UP involves the money at stake. The original complaint concerned $11 million and after adding BNSF's counterclaims the amount raised to approximately $135 million. UP argues the difference is so vast that the court cannot assume that the parties agreed to submit this amount to a single arbitration. Although this is a large change, that alone does not affect the parties' assumptions under the agreements. UP and BNSF agreed to arbitration in nearly every agreement implicated. So whether litigated in a single arbitration proceeding or 34 separate ones, the claims giving rise to the $135 million would be subject to arbitration. See Stolt-Nielsen, 559 U.S. at 682 ("In this endeavor, as with any other contract, the parties' intentions control.").

[6] The plaintiff had not identified all the agreements within the arbitration demand. Therefore the parties recognized that even more contracts may be implicated. Certain Underwriters, 489 F.3d at 583.

6

asking the court to stay the arbitration proceedings and order eight separate arbitrations in conjunction with the eight contracts. Id. Certain Underwriters held that under Howsam, the court resolves the question of arbitrability "only when there is a question regarding whether the parties should be arbitrating at all." Id. at 585 (quoting Dockser, 433 F.3d at 426). Since consolidation of arbitration proceedings does not raise this type of question, but rather a procedural question regarding the type of arbitration proceeding required under each contract, the arbitrator, not the court, decides whether claims arising under separate contracts should be consolidated. Id. at 587–88.

Likewise, the arbitrator must decide whether to consolidate and resolve in one arbitration proceeding the parties' claims arising from over 30 separate UP/BNSF contracts, which contain arbitration provisions.[7] UP and BNSF agree that not only the UP claim, but each of BNSF's counterclaims, will be submitted to arbitration in accordance with the contracts' provisions. The question of how these arbitrations will be conducted, whether consolidated or otherwise, is a procedural question and a matter for the arbitrator, and not the court, to decide. See Green Tree Financial Corp v. Bazzle, 539 U.S. 444, 452 (2003) ("[T]he question is not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter. . . . Rather the relevant question here is what kind of arbitration proceeding the parties agreed to.")

Finally, UP argues that because many of the arbitration provisions differ (e.g., with variations on how an arbitrator is selected), one arbitrator or a single panel cannot determine the consolidation of claims. But the parties agreed to arbitrate the merits of their claims through the various arbitration provisions. Therefore, matters on arbitral procedure, including the selection of arbitrators, is "'[i]ncluded within the scope of [the]

---

[7] The court notes that although there are numerous contracts, not all are distinct, many of the contracts have substantially similar or identical arbitration provisions. (See, e.g., Filing Nos. 18, 18-1, 18-2, 18-3, 18-4, 18-5, 18-6, 18-7, & 18-10).

7

default rule' in favor of arbitral resolution[.]'" Certain Underwriters, 489 F.3d at 588 (quoting Dockser, 433 F.3d at 425); see also Employers Insurance, 443 F.3d at 582.

To be clear, UP remains free to argue in the arbitration proceeding on its claim that BNSF's counterclaims must be arbitrated in separate proceedings, due to the varying arbitrator selection provisions or for any other reasons. Such decisions are properly left to the arbitrator, not the court.

Accordingly,

IT IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that Defendant's Motion to Dismiss, (filing no. 2), be granted

The parties are notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

Dated this 24th day of June, 2016

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge